## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA

| | |
|---|---|
| ACCESS HEALTHCARE PHYSICIANS, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> IT POSSIBLE, LLC, a Maryland limited liability company and KIRIT DESAI <br><br> Defendants. | Case No. 8:21-cv-2306 |

## VERIFIED COMPLAINT AND INJUNCTIVE RELIEF REQUESTED

Plaintiff, Access Health Care Physicians, LLC, a Florida limited liability company ("Access Health") hereby files this Verified Complaint against Defendants, IT Possible, LLC, a Maryland limited liability company ("IT Possible"), and Kirit Desai ("Mr. Desai")(collectively "Defendants"), and states as follows:

## INTRODUCTION

1.      The plotline of this controversy starts out in an all too familiar fashion: after Access Health rejected their business proposal, the disgruntled Defendants steal something of value of Access Health's and use the property for leverage. This case is about Defendants' computer and data abuse, unauthorized access through domain hijacking, and ongoing wrongful retention of Access Health's cyber property without a right of possession.

2.      Plaintiff in this action, Access Health, is a medical group that has thousands of patients through the State of Florida, with 88 medical offices and over 213 health care providers in 25 different cities. Access Health's internet presence is one of the most valuable assets to its wide-spread business, as evinced by Access Health's 14 different active websites and domains. Indeed, over the last decade, Access Health, along with its founder and primary owner, Dr. Pariksith Singh ("Dr. Singh"), have purchased, registered and maintained 78 domain names over the last decade through the domain registrar, GoDaddy Operating Company, LLC ("GoDaddy"), in order to house their websites.

3.      Defendant, Desai, and his non-party wife, Dr. Pratibha Desai ("Dr. Desai") operate multiple Hematology and Oncology practices and related businesses. In 2018, Defendant, Mr. Desai and Dr. Desai solicited Access Health to jointly form an entity named Comprehensive Hematology Oncology, LLC ("CHO"). Thus, in anticipation of its new business venture, Access Health purchased 12 domain names under its existing account with GoDaddy to be used for CHO. Notably, Access Health never provided the login credentials or authorized Desai to access or use its GoDaddy account. Shortly after the initiation of CHO, the parties fell into a dispute, and Access Health withdrew from its involvement in CHO. Sometime thereafter, Desai hired Defendant, IT Possible, as its technology vendor in connection with CHO.

4.      The issues in this case arose three weeks ago, when Defendants hijacked Access Health's domain names by gaining unauthorized access to Access

Health's GoDaddy account. Typically, when one hears "cyber theft", they imagine a shady character sitting behind a slew of monitors, working hours on end to infiltrate secured networks through intensive coding and password cyphering.  In reality, cyber theft has surfaced through much simpler social engineering attacks known as domain hijacking, which is the simple act of modifying or transferring control of the registration of a domain name without the permission of its original registrant. As further alleged below, Defendants here "hijacked" the Access Health's domains by making misrepresentations to persuade Access Health's domain registrar, GoDaddy, into modifying the primary email address linked to the account, and then, Defendants simply changed the login credentials to "lock" Access Health out of its own account.

5.     Despite multiple requests, Defendants refuse to return Access Health's GoDaddy account information and currently retain possession of Access Health's domains. Defendants have impaired the availability of Access Health's data and prevented Access Health from its ability to effectively maintain its domain names, and in turn, its online business presence. Unless Defendants are enjoined immediately, there will be substantial, imminent, and irreparable financial and reputational harm to Access Health. This is a civil action for injunctive relief and damages against Defendants for violations under the Computer Fraud and Abuse

Act[1] and the Florida Computer Abuse and Data Recovery Act[2], and for civil conversion.

## PARTIES

6.      Plaintiff, Access Health, is a Florida limited liability company with a principal address in Spring Hill, Florida. Access Health is a Florida-based multi-service medical facility that provides primary care services and diagnostic testing for thousands of Florida patients.

7.      Defendant, Mr. Kirit Desai, is an individual who, upon information and belief, resides in Saint Petersburg, Florida. Mr. Desai assists his wife, Dr. Desai, in the operation of various Hematology and Oncology practices and related businesses.

8.      Defendant, IT Possible, is a Maryland limited liability company with a principal address in Salisbury, Maryland. Upon information and belief, IT Possible provides computer and IT solutions and services to CHO, the company currently managed by Dr. and Mr. Desai.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, as the action arises under the federal Computer Fraud and Abuse Act (18 U.S.C. § 1030)("CFAA").

---

[1] 18 U.S.C. § 1030
[2] §668.801, *et. seq.*, Florida Statutes

4

10.     This Court has subject matter jurisdiction under 28 U.S.C. §1367 over the claims for violation of the Florida Computer Abuse and Data Recovery Act (§668.801, *et. seq*., Fla. Stat.)("CADRA") and state law conversion, as the supplemental claims form part of the same case and controversy as the CFAA claim.

11.     This Court has personal jurisdiction over Defendant, Mr. Desai, because he is a citizen of and domiciled in Florida, living within the jurisdiction of the U.S. District Court for the Middle District of Florida, Tampa Division.

12.      This Court has personal jurisdiction over Defendant, IT Possible, as a result of IT Possible's unauthorized access into, and retention of property from, a "protected computer" as defined in 18 U.S.C. § 1030(e)(2)(B) that is used for commerce or communication with persons and entities in Florida, and also as a result of IT Possible's tortious conduct causing injurious effect in Florida.

13.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Access Health's claims occurred in this judicial district.

### **FACTS**

14.      Access Health is a multi-service medical facility that provides primary care services and diagnostic testing for thousands of patients throughout the State of Florida. Due to its wide-spread practice, Access Health relies heavily on their websites to effectively run their businesses, as described further below.

15.     Over the past ten years, Access Health and Dr. Singh have registered or purchased internet domains used in connection with Dr. Singh's business ventures (the "Access Health Domains"). The registration services used in connection with the Access Health Domains have been provided by non-party, GoDaddy, a well-known internet domain registrar and web hosting company headquartered in Arizona. A true and correct copy of the list of the Access Health Domains is attached as **Exhibit A**.

16.     Access Health uses these Access Health Domain to operate its six websites.  These websites are a central means of communication with Access Health's patients and a primary method of marketing the services of Access to the public.  As such, these websites are necessary for Access Health' continued corporate existence.  Any modification to the Access Health Domain can leave these websites non-operational.  Such disfunction can interfere with Access Health's communications with its patients and substantially affect Access Health's reputation, brand image, and the public perception of Access Health.  Access Health has spent the past decade managing these websites to maximize their value as a tool to communicate with the public at large and with Access Health's patients in particular.  Modifications to these Access Health Domains can negatively impact Access Health's reputation, image and goodwill in a manner which cannot be corrected.  Because the damage is to the perception of Access Health by unknown members of the public, the amount of damages cannot be easily quantified and

their perception of Access Health cannot be corrected by the payment of monetary damages.

17.     GoDaddy has provided services relating to the Access Health Domains under an overarching account owned by Access Health and assigned Customer No. 90763401 by GoDaddy (the "Access Health GoDaddy Account").

18.     The Access Health GoDaddy Account was opened by Access Health.[3] Services provided by GoDaddy under the umbrella of the Access Health GoDaddy Account include registration services in connection with the Access Domains, as well as hosting services in which GoDaddy's servers host Domain Name System ("DNS") software packages integral to the operation and functionality of active websites associated with the Access Domains.

19.     GoDaddy's hosting of the DNS software packages for active websites involves a substantial number of technically complex discretionary choices to be made by the website owner. There are various settings and features of GoDaddy's hosting infrastructure that have to be selected and configured in particular ways in order to shape the functionality and user experience associated with an active website. For the active websites associated with the Access Health Domains, Access Health has devoted substantial time and financial resources to analyzing the pertinent features and settings, and creating specific proprietary configurations

---

[3] Access Health cannot confirm the date the account was opened at this time due to its inability to access the GoDaddy Access Health Account dashboard.

that optimize website performance in conjunction with the DNS hosting services provided by GoDaddy through the Access Health GoDaddy Account.

20.    Customer management of the Access Health GoDaddy Account occurs using an "owner dashboard" that is essentially an online interface through which an account owner can log in, review pertinent information concerning the domains associated with the account, add, subtract, or modify services provided by GoDaddy in relation to those domains, review invoices and charges from GoDaddy, and make payments to GoDaddy for services associated with particular domains within the account.

21.    Access to the GoDaddy dashboard occurs through a "Customer Number + owner password" combination in which the GoDaddy Customer Number is the user name, and the password is created by the account owner. Dr. Singh created the owner password for the Access Health GoDaddy Account. The owner password is stored in a secure enterprise password management system used by Access Health, and this password management tool only permits an account password to be entered by the specific individuals associated with that password.

22.    Dr. Singh and the Director of IT for Access Health, Ed Laughman, are the only two individuals associated with the Access Health GoDaddy Account owner password, and thus, the only two individuals who are able to access that password in the enterprise password management system, and use it (in

combination with the GoDaddy Customer Number) when logging into the owner dashboard for the Access Health GoDaddy Account.

23.    Using the delegation powers associated with the GoDaddy owner dashboard, three other Access Health employees were granted limited authorization to view a subset of the information contained on the GoDaddy owner dashboard, using separate "user name + password" combinations that differ from the "Customer Number + owner password" combination used to access the owner dashboard.

24.    However, no one else employed by or associated with Access Health or Dr. Singh has access to the owner password for the Access Health GoDaddy Account, and no one else employed by or associated with Access Health or Dr. Singh is authorized to access the GoDaddy owner dashboard.

25.    Through the GoDaddy owner dashboard, an account owner is able to designate an official email address to which GoDaddy can send email communications relating to the account. The email address designated by Dr. Singh for these purposes was Purchasing@ahcpllc.com.

26.    Kirit Desai is an individual who from 2019 through early 2021 was involved with Dr. Singh in discussions concerning a possible joint venture relating to a healthcare provider called Comprehensive Hematology & Oncology ("CHO"). As part of this effort, several internet domains associated with the CHO brand (the "CHO Domains") were registered for potential future use. These registrations were accomplished through the Access Health GoDaddy Account, and GoDaddy's

registration services were paid for using Access Health's American Express corporate credit card. A true and correct copy of a table listing the CHO Domains is attached as **Exhibit B**.

27.    The discussions surrounding the potential CHO joint venture with Access Health did not succeed.

28.    However, Dr. Singh did not cancel the CHO Domains because Mr. Desai agreed that he would have his IT vendor at the time, Ghanshyam Patel of Fusion IT Services, LLC, move the CHO Domains to a separate account, and in the interim, Mr. Desai also agreed to provide credit card information to Access Health in order to arrange for Mr. Desai to pay for any future GoDaddy registration or hosting services associated with the CHO Domains under the Access Health GoDaddy Account until Mr. Desai's IT vendor had completed the transfer of the CHO Domains to a new account.

29.    One of the CHO Domains is associated with an active website, www.comphemeonc.com, and the other CHO Domains registered through the Access GoDaddy Account are essentially variations on this name. GoDaddy provides hosting of DNS software packages for the www.comphemeonc.com website, just as it does for the active websites associated with various Access Domains encompassed within the Access GoDaddy Account.

30.    Upon Mr. Desai's approval, Access Health entered his credit card information into the Access Health GoDaddy Account and stored it as an approved payment method in anticipation for when GoDaddy issued a bill or invoice for a

service associated with a CHO domain, so that Access Health could select his credit card as the payment method when making an online payment (through the GoDaddy owner dashboard).

31.    Upon information and belief, only one charge was levied by GoDaddy in relation to a CHO Domain since April 2021, and that charge was paid by Access Health via Mr. Desai's stored credit card, per the process described above.[4]

32.    For charges associated with any of the Access Health Domains, payment has always been made via an Access Health corporate credit card, which was likewise stored as an approved payment method for the Access Health GoDaddy Account on the GoDaddy owner dashboard.

33.    On August 27, 2021, the Director of IT for Access Health, Ed Laughman, attempted to log in to the GoDaddy owner dashboard for the Access Health GoDaddy Account, using the "Customer Number + owner password" credentials linked to the account. The login attempts failed, and the screen displayed an error message stating that the login information entered was incorrect.

34.    After discovering the incident, Ed Laughman, on behalf of Access Health, acted promptly and submitted a "password reset" request to GoDaddy. Subsequently, Access Health received an email from GoDaddy via Pruchasing@ahcpll.com, the email account originally designated on the Access

---

[4] Access Health cannot confirm this information at this time due to its inability to access the GoDaddy Access Health Account dashboard.

Health GoDaddy Account, stating "We emailed a password reset link to k*****@comphemeonc.com." A true and correct screenshot of this email message is attached as **Exhibit C.**

35.     Thereafter, the three other Access Health employees who had previously been delegated limited access to the GoDaddy Access Health Account attempted to use their own "user name + password" credentials to log in to the limited subsections of the GoDaddy dashboard to which they had previously been given access to no avail.

36.     These Access Health employees received automated email replies from GoDaddy, stating in bold "Your account access has been removed." This bolded heading was followed by a message stating "I removed your account access. You no longer have access to products in my account…Thanks, Kirit Desai." In the upper right-hand corner of each email reply was a notation that read "Kirit Desai – Customer Number: 90763401", which is the same Customer Number that had always been associated with the Access Health GoDaddy Account in the roughly ten years since Dr. Singh first opened the account. A true and correct copy of one of the automated email replies is attached as **Exhibit D**.

37.     Upon information and belief, at or around August 27, 2021, and without authorized access provided by the Access Health, the owner of the Access Health GoDaddy Account, Defendants obtained unauthorized access to the owner dashboard for the Access Health GoDaddy Account, stripped Dr. Singh, Ed Laughman, and Access Health's other authorized delegates of their credentials,

changed the owner password, changed the default owner email address to which official account-related communications would be sent, and thereby completely seized unauthorized control of the Access Health GoDaddy Account and the Access Health Domains.

38.     On September 13, 2021, Defendant, IT Possible emailed Access Health and readily admitted, "[w]e have obtained access to the GoDaddy account." The email went on to suggest that Access Health should open a new account for the Access Health Domains, leaving the CHO Domains as the only domains in the Access Health GoDaddy Account, which Access Health has owned and administered for approximately ten years. A true and correct copy of the September 13, 2021 email is attached as **Exhibit E**.

39.     Upon information and belief, Defendants accomplished their domain hijacking by Desai and/or IT Possible calling GoDaddy, stating that they could verify an authorized payment method associated with the Access Health GoDaddy Account, providing the credit card information for the card that had been used to pay a charge associated with the CHO Domains, and then claiming to have lost the password for the owner dashboard, and likewise to have lost access to the owner email account previously used by GoDaddy for official account-related communications.

40.     Any representations made by Desai or IT Possible, whether express or implied, suggesting that Desai had lost his password for the GoDaddy account, and

lost access to the email account previously used for account-related communications, were false.

41.     Specifically, Access Health never provided authorized access (limited or otherwise) to Defendants, and Defendants never had authorized possession of any password for the Access Health GoDaddy Account, much less the specific owner password used to access the GoDaddy owner dashboard. Likewise, Access Health never provided, and Defendants never received, authorized access to the Purchasing@ahcpllc.com email account designated as the official email of the Access Health GoDaddy Account.

42.     At no time did Access Health or any employee or representative thereof, provide Defendants permission or authorization to access the GoDaddy owner dashboard, or any portion thereof. Defendants were never given access to or permission to use Dr. Singh's owner password associated with the Access Health GoDaddy Account, and at no point were Defendants given access to the Purchasing@ahcpllc.com email account, or to any emails sent by GoDaddy to that account. Access Health has never authorized Defendants to change any of the information or settings in the GoDaddy owner dashboard associated with the Access Health GoDaddy Account.

43.     Access Health has made numerous requests to Defendants to return Access Health's access to the Access Health GoDaddy Account. Defendants refuse to return and continue to retain Access Health's property without a right of possession.

14

44.    Defendants' unauthorized access and wrongful retention of Access Health's property has impaired the availability of Access Health's data and prevented Access Health from its ability to effectively maintain its Access Health GoDaddy Account and Access Health Domains, and in turn, its online business presence.

45.    Access Health has already been, and continues to be, irreparably harmed by Defendants' actions of domain hijacking, unauthorized access and wrongful retention of the Access Health GoDaddy Account and Access Health Domains.

46.    Now that Defendants have wrongfully gained unauthorized access to the owner dashboard for the Access Health GoDaddy Account, Defendants' control is nearly absolute.

47.    Specifically, Defendants can, if they have not already, change the registrant information associated with specific internet domains encompassed within the account, thereby creating the false appearance of a change of ownership in relation to those domains.

48.    Defendants can likewise add, subtract, modify, or cancel any or all of the services provided by GoDaddy to Access Health in relation to any of the Access Health Domains encompassed within the account, thereby placing Access Health's active websites at risk of failing or being taken down.

49.    Defendants have already stripped previously authorized users of their ability to access the account and can now add additional account users who lack

prior authorization by Access Health. Defendants can also delete any pre-existing authorized payment methods associated with the account, thereby rendering it impossible to use those methods to pay for services associated with the Access Health GoDaddy Account.

50.     More specifically, because Defendants have control over the Access Health GoDaddy Account, this control deprives Access Health of the ability to conduct server maintenance, which deprives Access Health of the ability to troubleshoot or correct issues with the server if one of its active websites goes "down." In addition, Defendants' control over the Access Health GoDaddy Acount prevents Access Health from making payments to GoDaddy in order to continue and protect its account/domain name services.

51.     As of the time Defendants gained access, GoDaddy billed Access Health for each individual service it pays for, which is then billed via the GoDaddy customer number. There is no automatic billing procedure. Thus, Access Health must take affirmative steps to pay for the services it uses or risk losing that domain. Without access to the dashboard and account, Access Health will continue to be billed, but will not be able to make those payments. If Access Health cannot pay for GoDaddy's services, there is risk that the domain name services will be cancelled and the Access Health Domains will be "locked" and no longer work and will allow another third-party the opportunity to purchase the Access Health Domains, furthering the conversion.

52.     Loss of the Access Health Domains damages Access Health's ability to communicate with its customers and the public and its public image as its websites would now direct its customers and the public to another provider.  This harm could not be remedied by monetary damages alone. Also, while there is no automatic billing procedure, all of Access' payment methods are currently embedded and registered to its account.

53.     Furthermore, given the conversion, Defendants now have unauthorized access to all of Access Health's company credit card payment information embedded into the Access Health GoDaddy Account.

54.     Thus, in obtaining unauthorized access to Access Health's GoDaddy dashboard, Defendants have obtained information from this computer system, which includes but is not limited to Access Health's proprietary settings, its confidential account information, its company credit card information, its intellectual property, and various other Access Health information maintained in the GoDaddy system.

55.     Furthermore, forcing the export of the Access Health Domains to a new GoDaddy account would require a complete re-setting of the proprietary DNS configurations used by Access Health to sustain the performance and functionality of the multiple active websites associated with various Access Domains. This process would be expensive and time-consuming and would result in at least a 48 to 72 hour period in which the active Access Health websites were entirely offline,

which would irreparably harm not only Access Health, but its patients and customers, as well.

56.    Access Health has been forced to expend scores of manhours of its employees and outside counsel in an effort to detect and correct Defendants' unauthorized access to the Access Health Domains and Access Health GoDaddy Account.  In addition, Access Health has been forced to outsource services with data center support and continue operation of outside datacenter vendors due to Defendants' actions. To date, Access Health has damages in excess of $150,000 due to the harm or loss that Defendants caused and is in the position to further cause due to its unauthorized access.

57.    All conditions precedent to the filing of this action have been satisfied, waived or have occurred.

58.    Access Health has retained outside legal counsel, including the undersigned law firms, to represent it in this action and is obligated to pay said firm reasonable attorneys' fees and costs incurred herein.

**COUNT I**
**VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT**
(18 U.S.C. § 1030)

59.    Access Health realleges and reincorporates Paragraphs 1-58 above as if fully set forth herein.

60.    Access Health seeks damages and injunctive relief pursuant to the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030.

61.     Although the thrust of the CFAA is criminal, the statute also provides a civil remedy under 18 U.S.C. § 1030(g), which states that "Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief."

62.     The term "computer" under the CFAA means any device for processing or storing data (excluding an automated typewriter, portable handheld calculator, or other similar device). *See* 18 U.S.C. § 1030(e)(1). Sections 1030(a)(1)-(7) of the CFAA define various types of prohibited conduct that constitute violations of the statute. A key element of certain of these statutory violations is that the prohibited conduct must have taken place in relation to a "protected computer."

63.     A "protected computer" includes any computer used in interstate commerce. *See* 18 U.S.C. § 1030(e)(2). The Access GoDaddy Account, including the interactive online interface that serves as the owner dashboard, is part of an online domain name registration management platform. Online websites, databases, and interactive platforms and interfaces of this sort, when used in interstate commerce, are "protected computers" under the CFAA.

64.     Defendants' conduct as alleged in paragraphs 34-56 above implicates Defendants in multiple violations of the CFAA.

65.     Section 1030(a)(2)(C) prohibits intentionally accessing a protected computer, without authorization or by exceeding authorized access, and thereby

obtaining information from a protected computer. Defendants violated this section by intentionally taking steps to access the GoDaddy owner dashboard for the Access GoDaddy Account, knowing full well that Access Health had never authorized such access. Even if Defendants believed their prior failure to move the CHO domains to a new account justified their taking steps to view information associated specifically with those domains, Defendants knew they did not have authorization to obtain the other information found within the owner dashboard – including but not limited to a list of the domains registered by Plaintiffs, a list of the registrants associated with each domain, the list of individuals designated by Plaintiffs as having various levels of access to the GoDaddy dashboard, and Access Health corporate credit card information associated with the list of authorized payment methods stored in the owner dashboard of the Access GoDaddy Account.

66.    Section 1030(a)(4) prohibits knowingly and with intent to defraud accessing a protected computer, without authorization or by exceeding authorized access, to obtain anything of value or further a fraud. Defendants violated this section by knowingly and intentionally making false representations (either express or implied) to GoDaddy, suggesting they once had access to the owner password and owner email address associated with the Access GoDaddy Account, but had somehow "lost" this information. Defendants perpetrated this scheme to obtain the value associated with access to and use of Access Health's proprietary configuration of DNS software packages and account settings associated with the Access Domains (this proprietary DNS configuration intellectual property was

developed by Access Health, at considerable expense). Defendants' fraudulent scheme is also designed to obtain leverage against Plaintiffs, and Defendants have demanded various services, support, and data from Plaintiffs, in response to demands from Plaintiffs to restore their access and control over the Access GoDaddy Account. Defendants' fraudulent scheme is further designed to allow them to retain the value of Access Health's DNS configuration intellectual property described above, and to use this intellectual property in support of the CHO domains, while forcing Access Health to incur substantial costs in reconstituting this intellectual property for the Access Domains in a new GoDaddy account.

67.     Defendants' conduct in the foregoing paragraph also violates Section 1030(a)(7), which prohibits intentionally extorting anything of value by transmitting information that demands a thing of value in relation to a protected computer, where such damage was caused to facilitate the extortion. "Damage" is defined under Section 1030(e)(8) of the CFAA as "any impairment to the integrity or availability of data, a program, a system, or information[.]" Defendants' actions as alleged herein have impaired the integrity and availability of the GoDaddy owner dashboard associated with the Access GoDaddy Account, as set forth in ¶¶33-54 above.

68.     Sections 1030(a)(5)(A)-(C) prohibit knowingly causing the transmission of information or a command that intentionally causes damage without authorization to a protected computer (Section 1030(a)(5)(A)), as well as intentionally accessing a protected computer and recklessly causing damage

(Section 1030(a)(5)(B)), or intentionally accessing a protected computer without authorization, and as a result of such conduct, causing damage and loss (Section 1030(a)(5)(C)). Defendants' conduct as described above violates Sections 1030(a)(5)(A), (a)(5)(B) and (a)(5)(C). The only additional element under Section 1030(a)(5)(C) is the requirement of "loss", defined broadly under Section 1030(e)(11) as encompassing "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, restoring the damaged data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."

69.    Plaintiffs have incurred tens of thousands of dollars in "loss" as a direct result of Defendants' unlawful actions, a figure that grows with each passing day. These losses include attorney fees, fees paid to consultants and independent contractors involved in assessing and seeking to mitigate the damage incurred by Access Health, and substantially increased costs (currently in excess of $20,000) associated with delays under a data migration program that was interrupted due to Plaintiffs' sudden and unexpected loss of access to the Access GoDaddy Account and the GoDaddy owner dashboard.

70.    In addition to harm and loss compensable with a monetary award, Defendants' violations of the CFAA have caused and continue to cause Access Health irreparable harm, for which Access Health has no adequate remedy at law.

Access Health will continue to suffer irreparable harm until an injunction issues against Defendants.

## COUNT II
## VIOLATION OF THE FLORIDA COMPUTER ABUSE AND DATA RECOVERY ACT
(§§688.801, et. seq., Fla. Stat.)

71.     Access Health realleges and reincorporates Paragraphs 1-58 above as if fully set forth herein.

72.     This is an action for damages and injunctive relief against Defendants under Florida's Computer Abuse and Data Recovery Act (§§688.801, et. seq., Fla. Stat.)("CADRA").

73.     CADRA provides a private right to action for damages against one who "[o]btains information from a protected computer without authorization and, as a result, causes harm or loss." §668.803(1), Fla. Stat.

74.     Under CADRA, a "protected computer" means:

[a] computer that is used in connection with the operation of a business and stores information, programs, or code in connection with the operation of the business in which the stored information, programs, or code can be accessed only by employing a technological access barrier.

§668.802(6), Fla. Stat.

75.     Defendants violated CADRA, §688.803(1), Fla. Stat. because Desai and IT Possible knowingly and with intent to cause harm or loss to Access Health, obtained information from a protected computer without authorization, and, as a result, caused harm or loss to Access Health.

76.     Defendants knowingly and with the intent to cause harm or loss, made misrepresentations to Access Health's domain registrant, GoDaddy, to obtain information from a protected computer without authorization.

77.     Upon information and belief, at or around August 27, 2021, Defendants obtained unauthorized access to the owner dashboard for the Access Health GoDaddy Account, stripped Dr. Singh, Ed Laughman, and Access Health's other authorized delegates of their credentials, changed the owner password, changed the default owner email address to which official account-related communications would be sent, and thereby completely seized unauthorized control of the Access Health GoDaddy Account and the Access Health Domains.

78.     On September 13, 2021, Defendant, IT Possible emailed Access Health and readily admitted, "[w]e have obtained access to the GoDaddy account." The email went on to suggest that Access Health should open a new account for the Access Health Domains, leaving the CHO Domains as the only domains in the Access Health GoDaddy Account, which Access Health and Dr. Singh have owned and administered for approximately ten years.

79.     In obtaining unauthorized access to Access Health's GoDaddy dashboard, Defendants have obtained information from a protected computer, which includes, but is not limited to, Access Health's proprietary settings, its confidential account information, its company credit card information, its intellectual property, and various other Access Health information maintained in the GoDaddy system.

80.     Defendant's theft and domain hijacking, unauthorized access and wrongful retention of the Access Health GoDaddy Account and Access Health Domains has caused Access Health harm and loss.

81.     Access Health has been forced to expend scores of manhours of its employees and outside counsel in an effort to detect and correct Defendants' unauthorized access to the Access Health Domains and Access Health GoDaddy Account.  In addition, Access Health has been forced to outsource services with data center support and continue operation of outside datacenter vendors due to Defendants' actions. To date, Access Health has damages excess of $150,000 due to the harm or loss that Defendants caused and is in the position to further cause due to its unauthorized access.

82.     In addition to harm and loss compensable with a monetary award, the theft has caused, and continues to cause Access Health irreparable harm for which Access Health has no adequate remedy at law. Access Health will continue to suffer irreparable harm until an injunction issues against Defendants.

### COUNT III
### CONVERSION

83.     Access Health realleges and reincorporates Paragraphs 1-58 above as if fully set forth herein.

84.     Over the past ten years, Access Health and Dr. Singh have registered or purchased internet domains used in connection with Dr. Singh's business

ventures from the registrar, and are the owners of the domain names within the Access Health GoDaddy Account assigned Customer No. 90763401.

85.    Without authorization from Health Access, Defendants converted Health Access's Access Health GoDaddy Account and all the domains affiliated and owned by Health Access under that account.

86.    Access Health never provided authorized access (limited or otherwise) to Defendants, and Defendants never had authorized possession, of any password for the Access Health GoDaddy Account, much less the specific owner password used to access the GoDaddy owner dashboard. Likewise, Access Health never provided, and Defendants never received, authorized access to the Purchasing@ahcpllc.com email account designated as the official email of the Access Health GoDaddy Account.

87.    At no time did Access Health or any employee or representative thereof, provide Defendants permission or authorization to access the GoDaddy owner dashboard, or any portion thereof. Defendants were never given access to or permission to use Dr. Singh's owner password associated with the Access Health GoDaddy Account, and at no point were Defendants given access to the Purchasing@ahcpllc.com email account, or to any emails sent by GoDaddy to that account. Access Health has never authorized Defendants to change any of the information or settings in the GoDaddy owner dashboard associated with the Access Health GoDaddy Account.

88.     Access Health has made numerous requests and demands to Defendants to return Access Health's access to the Access Health GoDaddy Account.

89.     Despite Access Health's demands for the return of the property, Defendants refuse to return and continue to retain Access Health's property without a right of possession.

90.     Defendant retains wrongful dominion or control over Access Health's property without a valid right of possession to the detriment of the rights of Access Health, the actual owner of the property.

91.     Defendant's wrongful assumption of authority over Access Health's Access Health GoDaddy Account property deprives Plaintiff of its use of possession of the property in question. Defendants' unauthorized access and wrongful retention of Access Health's property has impaired the availability of Access Health's data and prevented Access Health from its ability to effectively maintain its Access Health GoDaddy Account and Access Health Domains, and in turn, its online business presence.

92.     As a result of Defendants' conversion of Access Health's property, Access Health has suffered damages.

93.     Access Health has been forced to expend scores of manhours of its employees and outside counsel in an effort to detect and correct Defendants' unauthorized access to the Access Health Domains and Access Health GoDaddy Account.  In addition, Access Health has been forced to outsource services with

data center support and continue operation of outside datacenter vendors due to Defendants' actions. To date, Access Health has damages in excess of $150,000 due to the harm or loss that Defendants caused and is in the position to further cause due to its unauthorized access.

94.     In addition to harm and loss compensable with a monetary award, the theft has caused, and continues to cause Access Health irreparable harm for which Access Health has no adequate remedy at law. Access Health will continue to suffer irreparable harm until an injunction issues against Defendants.

## COUNT IV
## INJUNCTION
(18 U.S.C.A. §1030)

95.     Access Health realleges and reincorporates Paragraphs 1-58  above as if fully set forth herein.

96.     This is an action for injunctive relief against Defendants under CFAA, 18 U.S.C. §1030(g).

97.     Access Health has already been, and continues to be, irreparably harmed by Defendants' actions of domain hijacking, unauthorized access and wrongful retention of the Access Health GoDaddy Account and Access Health Domains.

98.     Now that Defendants have wrongfully gained unauthorized access to the owner dashboard for the Access Health GoDaddy Account, Defendants' control is nearly absolute.

99.     Specifically, Defendants can, if they have not already, change the registrant information associated with specific internet domains encompassed within the account, thereby creating the false appearance of a change of ownership in relation to those domains.

100.    Defendants can likewise add, subtract, modify, or cancel any or all of the services provided by GoDaddy to Access Health in relation to any of the Access Health Domains encompassed within the account, thereby placing Access Health's active websites at risk of failing or being taken down.

101.    Defendants have already stripped previously authorized users of their ability to access the account and can now add additional account users who lack prior authorization by Access Health. Defendants can also delete any pre-existing authorized payment methods associated with the account, thereby rendering it impossible to use those methods to pay for services associated with the Access Health GoDaddy Account.

102.    More specifically, because Defendants have control over the Access Health GoDaddy Account, this control prevents Access Health from making payments to GoDaddy in order to continue and protect its account/domain name services.

103.    As of the time Defendants gained access, GoDaddy billed Access Health for each individual service it pays for, which is then billed via the GoDaddy customer number. There is no automatic billing procedure. Thus, Access Health must take affirmative steps to pay for the services it uses or risk losing that domain.

Without access to the dashboard and account, Access Health will continue to be billed, but will not be able to make those payments. If Access Health cannot pay for GoDaddy's services, there is risk that the domain name services will be cancelled and the Access Health Domains will be "locked" and no longer work and will allow another third-party the opportunity to purchase the Access Health Domains, furthering the conversion.

104.    Loss of the Access Health Domains damages Access Health's ability to communicate with its customers and the public and its public image as its websites would now direct its customers and the public to another provider.  This harm could not be remedied by monetary damages alone. Also, while there is no automatic billing procedure, all of Access' payment methods are currently embedded and registered to its account.

105.    Furthermore, given Defendants unauthorized access and conversion of Access Health's property, Defendants now have unauthorized access to all of Access Health's company credit card payment information embedded into the Access Health GoDaddy Account.

106.    Thus, in obtaining unauthorized access to Access Health's GoDaddy dashboard, Defendants have obtained information from this computer system, which includes but is not limited to Access Health's proprietary settings, its confidential account information, its company credit card information, its intellectual property, and various other Access Health information maintained in the GoDaddy system.

107.   Furthermore, forcing the export of the Access Health Domains to a new GoDaddy account would require a complete re-setting of the proprietary DNS configurations used by Access Health to sustain the performance and functionality of the multiple active websites associated with various Access Domains. This process would be expensive and time-consuming and would result in at least a 48 to 72 hour period in which the active Access Health websites were entirely offline, which would irreparably harm not only Access Health, but its patients and customers, as well.

108.   Access Health has been forced to expend scores of manhours of its employees and outside counsel in an effort to detect and correct Defendants' unauthorized access to the Access Health Domains and Access Health GoDaddy Account.  In addition, Access Health has been forced to outsource services with data center support and continue operation of outside datacenter vendors due to Defendants' actions. To date, Access Health has damages in excess of $150,000 due to the harm or loss that Defendants caused and is in the position to further cause due to its unauthorized access.

109.   Defendants have impaired the availability of Access Health's data and prevented Access Health from its ability to effectively maintain its Access Health GoDaddy Account and Access Health Domains, and in turn, its online business presence.

110.   Defendants must be immediately enjoined from retaining Access Health's property and restricting or preventing Access Health from using or accessing its Access Health GoDaddy Account and Access Health Domains.

## COUNT IV
## INJUNCTION
(§§688.801, et. seq., Fla. Stat.)

111.   Access Health realleges and reincorporates Paragraphs 1-58 above as if fully set forth herein.

112.   This is an action for injunctive relief against Defendants under CADRA, §§688.803 and 688.804.

113.   Access Health has already been, and continues to be, irreparably harmed by Defendants' actions of domain hijacking, unauthorized access and wrongful retention of the Access Health GoDaddy Account and Access Health Domains.

114.   Now that Defendants have wrongfully gained unauthorized access to the owner dashboard for the Access Health GoDaddy Account, Defendants' control is nearly absolute.

115.   Specifically, Defendants can, if they have not already, change the registrant information associated with specific internet domains encompassed within the account, thereby creating the false appearance of a change of ownership in relation to those domains.

116.   Defendants can likewise add, subtract, modify, or cancel any or all of the services provided by GoDaddy to Access Health in relation to any of the Access

Health Domains encompassed within the account, thereby placing Access Health's active websites at risk of failing or being taken down.

117.   Defendants have already stripped previously authorized users of their ability to access the account and can now add additional account users who lack prior authorization by Access Health. Defendants can also delete any pre-existing authorized payment methods associated with the account, thereby rendering it impossible to use those methods to pay for services associated with the Access Health GoDaddy Account.

118.   More specifically, because Defendants have control over the Access Health GoDaddy Account, this control prevents Access Health from making payments to GoDaddy in order to continue and protect its account/domain name services.

119.   As of the time Defendants gained access, GoDaddy billed Access Health for each individual service it pays for, which is then billed via the GoDaddy customer number. There is no automatic billing procedure. Thus, Access Health must take affirmative steps to pay for the services it uses or risk losing that domain. Without access to the dashboard and account, Access Health will continue to be billed, but will not be able to make those payments. If Access Health cannot pay for GoDaddy's services, there is risk that the domain name services will be cancelled and the Access Health Domains will be "locked" and no longer work and will allow another third-party the opportunity to purchase the Access Health Domains, furthering the conversion.

120.    Loss of the Access Health Domains damages Access Health's ability to communicate with its customers and the public and its public image as its websites would now direct its customers and the public to another provider.  This harm could not be remedied by monetary damages alone. Also, while there is no automatic billing procedure, all of Access' payment methods are currently embedded and registered to its account.

121.    Furthermore, given Defendants unauthorized access and conversion of Access Health's property, Defendants now have unauthorized access to all of Access Health's company credit card payment information embedded into the Access Health GoDaddy Account.

122.    Thus, in obtaining unauthorized access to Access Health's GoDaddy dashboard, Defendants have obtained information from this computer system, which includes but is not limited to Access Health's proprietary settings, its confidential account information, its company credit card information, its intellectual property, and various other Access Health information maintained in the GoDaddy system.

123.    Furthermore, forcing the export of the Access Health Domains to a new GoDaddy account would require a complete re-setting of the proprietary DNS configurations used by Access Health to sustain the performance and functionality of the multiple active websites associated with various Access Domains. This process would be expensive and time-consuming and would result in at least a 48 to 72 hour period in which the active Access Health websites were entirely offline,

which would irreparably harm not only Access Health, but its patients and customers, as well.

124.   Access Health has been forced to expend scores of manhours of its employees and outside counsel in an effort to detect and correct Defendants' unauthorized access to the Access Health Domains and Access Health GoDaddy Account.  In addition, Access Health has been forced to outsource services with data center support and continue operation of outside datacenter vendors due to Defendants' actions. To date, Access Health has damages in excess of $150,000 due to the harm or loss that Defendants caused and is in the position to further cause due to its unauthorized access.

125.   Defendants have impaired the availability of Access Health's data and prevented Access Health from its ability to effectively maintain its Access Health GoDaddy Account and Access Health Domains, and in turn, its online business presence.

126.   Defendants must be immediately enjoined from retaining Access Health's property and restricting or preventing Access Health from using or accessing its Access Health GoDaddy Account and Access Health Domains.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Access Health, respectfully requests this Court:

A.    Enter judgment in favor of Plaintiff and against Defendants on all counts;

B.      Award Plaintiff compensatory damages against each Defendant in an amount to be determined at trial;

C.      Award Plaintiff statutory damages pursuant to 18 U.S.C. §1030(g) and §668.804(1)(a)(b), Fla. Stat, in an amount to be determined at trial;

D.      Enter a temporary and permanent order, pursuant to 18 U.S.C §1030(g) and §§668.804(1)(c) and (d), Fla. Stat., as follows:

    i.    Declaring Plaintiff is the rightful owner of the Access Health GoDaddy Account;

    ii.    Declaring Plaintiff is the rightful registrant and registered name holder of the domain names purchased and registered under the Access Health GoDaddy Account, including the Access Domain Names and CHO Domain Names;

    iii.    Ordering that the Access Health GoDaddy Account, and all domain names thereunder, be immediately transferred and returned to Plaintiff;

    iv.    Enjoining Defendants from retaining Access Health's property and restricting or preventing Access Health from using or accessing its Access Health GoDaddy Account and Access Health Domains.

    v.    Enjoining Defendants from changing the registrant information associated with specific internet domains encompassed within the Access Health GoDaddy Account.

vi.  Enjoining Defendants from adding, subtracting, modifying, or canceling any or all of the services provided by GoDaddy to Access Health in relation to any of the Access Health Domains encompassed within the Access Health GoDaddy Account.

vii.  Directing Defendants to immediately cease and desist from accessing or utilizing the Access Health GoDaddy Account;

viii.  Ordering Defendants to immediately preserve all documentary and physical evidence in each of their care, custody or control, including all electronic devices that may contain any evidence of Plaintiff's converted property, including the login credentials;

E.  Enter a temporary and permanent order, temporary and permanent order, pursuant to 18 U.S.C §1030(g) and §§668.804(1)(c) and (d), Fla. Stat., enjoining Defendants from directly or indirectly accessing, deleting, copying, printing, transmitting or disclosing any of Plaintiff's information, communications or documents contained, embedded or stored within the Access Health GoDaddy Account;

F.  Award Plaintiff's reasonable attorneys' fees and costs, pursuant to §668.804(2);

G.  Award Plaintiff legal interest on all sums awarded; and

H.  Award Plaintiff such other and further relief as the Court deems just and proper.

DATED this 29th day of September, 2021.

**NELSON   MULLINS   RILEY   AND SCARBOROUGH LLP**
*Counsel for Plaintiff*

*/s/ Todd K. Norman*
**TODD K. NORMAN**
Florida Bar No.:0062154
*Lead Counsel*
**OLIVIA R. SHARE**
Florida Bar No.: 1010866
390 North Orange Avenue, Suite 1400
Orlando, Florida 33802-4961
Phone: (407)839-4200 / Fax: (407)425 -8377
Todd.norman@nelsonmullins.com
Olivia.share@nelsonmullins.com
Shawana.watt@nelsonmullins.com

## **VERIFICATION**

I, Pariksith Singh, owner of Access Health Care Physicians, LLC, a Florida limited liability company, have read the Verified Complaint and state under oath that the factual allegations therein are true and correct.

_____
By: Pariksith Singh

STATE OF FLORIDA
COUNTY OF ___HERNANDO___

The foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization, this __29th__ day of September, 2021, by Pariksith Singh, as owner of Access Health Care Physicians, LLC, a Florida limited liability company, on behalf of Access Health Care Physicians, LLC, who is personally known to me or who produced _____ as identification.

_____
(Signature of Notary Public)


_____
(Typed name of Notary Public)
Notary Public, State of __FLORIDA_____
Commission No.___GG235085_____
My commission expires: ___8/6/2022_____



Notary Public State of Florida
Lynda Dilts-Benson
My Commission GG 235085
Expires 08/06/2022

39